UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DARIEN HARRIS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:19-cv-00346-LEW |
| | ) | |
| RANDALL LIBERTY, et al., | ) | |
| | ) | |
| Defendants | ) | |

## ORDER ON MOTION FOR LEAVE TO AMEND COMPLAINT
## AND RECOMMENDED DECISION ON MOTION TO DISMISS

Plaintiff, an inmate incarcerated at the Maine State Prison, alleges Defendants[1] violated his constitutional rights and a federal statute due to the conditions of his confinement under "constant watch" for a period of eight days in September 2018. (Complaint, ECF No. 1.) The matter is before the Court on Defendants' Motion to Dismiss, (Motion to Dismiss, ECF No. 13), and Plaintiff's Motion to File Amended Complaint. (Motion to Amend, ECF No. 15.)

Following a review of the relevant pleadings and after consideration of the parties' arguments, I grant Plaintiff leave to amend the complaint and recommend the Court grant in part and deny in part the motion to dismiss the complaint, as amended.

---

[1] In his Complaint, Plaintiff identifies Andrew Ames as "Daniel Ames," Martha Burnham as "Lidia Burnham," Mark Engstfeld as "Joe Engstfeld," Jerimiah Manning as "Joe Manning," and John Merrifield as "Joe Merrifield." (Complaint, ECF No. 1.) Defendants identify the named Defendants as Andrew Ames, Joshua Black, Martha Burnham, Anthony Cantillo, Terry Scott Drake, Mark Engstfeld, Randall Liberty, Jeremiah Manning, Christian Melquist, John Merrifield, and Troy Ross. (Motion to Dismiss, ECF No. 13.)

## I. Plaintiff's Motion to Amend the Complaint

Rule 15(a)(1) of the Federal Rules of Civil Procedure permits a litigant to amend a pleading "once as a matter of course," subject to certain time constraints. When a party seeks to amend a complaint more than 21 days after the filing of a responsive pleading, the other party's consent or leave of court is required in order to amend the complaint. Fed. R. Civ. P. 15(a)(2). In such a case, the court is to grant leave to amend "freely" when "justice so requires." *Id.*; *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

Defendants oppose Plaintiff's motion to amend the complaint on futility grounds. When a plaintiff files a motion to amend in response to a motion to dismiss, the court may deny the motion to amend, in whole or in part, if the proposed amendment would be futile. *See Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). A "futile" amendment is one that "would fail to state a claim upon which relief could be granted." *Id.* In other words, "if the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." *Boston & Me. Corp. v. Hampton,* 987 F.2d 855, 868 (1st Cir. 1993).

Through their motion to dismiss, Defendants argue Plaintiff has not alleged sufficient facts to support a number of his claims. The assessment of the motion to dismiss and Defendants' futility argument as to the motion to amend involve the same analysis –

2

whether in his complaint as amended, Plaintiff has asserted actionable claims. *See Glassman*, 90 F.3d at 623 ("There is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim"). As explained below, assuming the truth of Plaintiff's factual assertions and allowing Plaintiff the benefit of all reasonable inferences from the alleged facts, *Blanco*, 802 F. Supp. 2d at 221, in his complaint as amended, Plaintiff asserts an actionable claim.[2] Plaintiff's complaint, therefore, is amended in accordance with this order and recommended decision.

## II. Motion to Dismiss

Defendants contend that Plaintiff cannot sustain a claim under the Prison Rape Elimination Act (PREA), 42 U.S.C. §§ 30301 et seq., that he has failed to state an actionable claim for a constitutional deprivation, and based on his allegations, that he cannot recover compensatory damages under the Prison Litigation and Reform Act.

**BACKGROUND FACTS**

The facts set forth below are derived from Plaintiff's complaint, as amended. (ECF Nos. 1, 15.) Plaintiff's factual allegations are deemed true when evaluating a motion to dismiss. *McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017).

---

[2] While many of Plaintiff's proposed amendments consist of conclusory statements, even if I concluded that Plaintiff's proposed amended complaint did not assert an actionable claim, it is appropriate to assess Plaintiff's amended allegations where Plaintiff sought leave to amend early in the litigation, there is no prejudice to Defendants, and where the proposed amendments arguably enhance the plausibility of Plaintiff's claim. *See Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, conjecture about the merits of the litigation should not enter into the decision whether to allow amendment").

Plaintiff alleges that on September 5, 2018, he was accused of possessing unidentified contraband and then strip-searched in his cell by Defendants Burnham, Merrifield and Engstfeld. (Complaint ¶ 1.) According to Plaintiff, after no contraband was found, Defendants Engstfeld and Merrifield lodged false reports, contending that Plaintiff had placed an unknown item in his mouth. (*Id*. ¶ 2; Motion to Amend ¶ 2. ECF No. 15) Following a negative urinalysis test, Plaintiff was placed in another cell, with only a mattress and without a toilet, sink or running water. (Complaint ¶¶ 3-4.) Plaintiff asserts that he was held under "constant watch" in this cell for eight and a half days. (*Id*. ¶ 13.) Plaintiff contends the cell was unclean and maintained at low temperatures. (*Id*. ¶ 5.) He further alleges that he was permitted to wear only a pair of boxer shorts, which he wore for the duration of his time under constant watch; that he was restrained and observed whenever he ate or relieved himself; and that he could not maintain his personal hygiene.[3] (*Id*. ¶¶ 7-8.) Plaintiff claims that Defendant Manning refused Plaintiff's requests for adequate bedding, showers, and clean clothing. (*Id*. ¶ 11.) Plaintiff alleges that he eventually consented, under duress, to a search of his mouth by a medical department dentist. (*Id*., ¶¶ 18-19; Motion to Amend ¶ 5.) No contraband of any type was ever discovered. (Complaint ¶ 19.)

Plaintiff alleges that Defendants Ross and Cantillo were responsible for overseeing and managing the constant watch practice, and that Defendant Manning refused all his requests to address the conditions. (Complaint ¶¶ 14, 11, 22; Motion to Amend ¶¶ 3, 5.)

---

[3] Plaintiff contends that his body and underwear were covered with his own waste. (*Id*., ¶ 9.)

Plaintiff further alleges that Defendants Melquist and Drake were required to inspect segregation housing every 24 hours and to meet with prisoners in segregation, but that neither did so. (Complaint ¶ 12.) Plaintiff also asserts that Defendant Cantillo interviewed Plaintiff while he was under constant watch, but he failed to change the conditions under which Plaintiff was being held. (Complaint ¶ 14; Motion to Amend ¶ 5.)

Plaintiff filed a grievance after being released from constant watch; Defendant Ames, who allegedly failed to investigate Plaintiff's grievance, dismissed the grievance. (Complaint ¶ 23.) Plaintiff filed another grievance with Defendant Burnham, who determined that Plaintiff could not grieve the asserted issues. (*Id*. ¶ 24.) Plaintiff then forwarded his grievance to Defendant Black, who concluded that the prison's policy governing "contraband watches" had been followed. (*Id*. ¶ 25.) Plaintiff appealed from Defendant Black's response to Defendant Liberty, who determined that appropriate procedures had been followed with respect to Plaintiff's treatment in constant watch. (*Id*. ¶ 26.)

## STANDARD OF REVIEW

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "The relevant question ... in assessing plausibility is not whether the complaint makes any particular factual

allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" *Rodríguez–Reyes v. Molina–Rodríguez,* 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Twombly,* 550 U.S. at 569 n.14).

Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard," *Young v. Wells Fargo, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013). *See also Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980) (explaining that the liberal standard applied to the pleadings of pro se plaintiffs "is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim").

## DISCUSSION

### A. Plaintiff's Claim Under the PREA

The Prison Rape Elimination Act "does not grant prisoners any specific rights." *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008).

> The Prison Rape Elimination Act of 2003 ("PREA"), was enacted to address the problem of rape in prison by creating a commission to study the issue and to develop national standards for the detection, prevention, reduction and punishment of prison rape. 42 U.S.C. § 15601. Nothing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate.

*Gagnon v. Fitzpatrick*, 1:15-cv-00355-JDL, 2015 WL 8601316, at*2 (D. Me. Nov. 4, 2015) (quoting *Amaker v. Fischer*, No. 1:10-cv-00977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014) (collecting cases)). Because PREA does not authorize a private cause of

6

action, Plaintiff has not and cannot state a claim against any defendant based on an alleged violation of PREA.

### B. Plaintiff's Claims Under 42 U.S.C. § 1983

The Court's jurisdiction over Plaintiff's claims is based on 42 U.S.C. § 1983, which provides a civil action to any person deprived of a federal right by a state actor. Pursuant to § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To maintain a claim under section 1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999).

To the extent Plaintiff asserts a § 1983 claim against an individual defendant, Plaintiff's allegations must support a finding that the individual, through his or her individual actions, violated Plaintiff's constitutional rights. *Ashcroft v. Iqbal,* 556 U.S. 662, 676–77 (2009). In other words, each defendant is entitled to an individualized assessment as to whether Plaintiff has asserted an actionable claim against that defendant.

7

## 1. Plaintiff's Eighth Amendment Claim

Plaintiff contends Defendants violated his rights under the Eighth Amendment Cruel and Unusual Punishments Clause and the Due Process Clause of the Fourteenth Amendment. "It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31 (1993). "Undue suffering, unrelated to any legitimate penological purpose, is considered a form of punishment proscribed by the Eighth Amendment." *Kosilek v. Spencer,* 774 F.3d 63, 82 (1st Cir. 2014) (citing *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Under the Eighth Amendment, prison conditions cannot be inhumane, but they need not be comfortable. *Farmer v. Brennan*, 511 U.S. 825, 832 (1970). Cruel and unusual punishment consists of the denial of "the minimal civilized measure of life's necessities" assessed based on "the contemporary standard of decency." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *see also Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008) (liability for "supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference" toward unconstitutional conduct of others). "Because precise knowledge of the chain of events leading to the constitutional violation may often be unavailable to a plaintiff" at the pleading stage of the litigation, *Ocasio-Hernandez,* 640 F.3d at 16, courts often must turn to "judicial experience and

8

common sense," *Iqbal*, 556 U.S. at 679, to make "a contextual judgment about the sufficiency of the pleadings.," *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009).

Unsanitary conditions of confinement can constitute cruel and unusual punishment, with actionable cases involving prolonged exposure to unsanitary conditions, which exposure at a minimum consisted of multiple days. *Hutto v. Finney,* 437 U.S. 678, 686 – 87 (1978) ("[T]he length of confinement cannot be ignored .... A filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months."). *See*, *e.g.*, *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (three days in proximity to human waste without adequate cleaning supplies deemed sufficient to state a non-frivolous claim); *Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir. 1996) (affirming entry of summary judgment where plaintiff was subjected to an overflowed toilet for four days); *but see Davenport v. DeRobertis,* 844 F.2d 1310, 1316 (7th Cir.1988) ("limiting inmates to one shower a week does not violate the Eighth Amendment").

Here, Plaintiff alleges that he was held in unsanitary conditions for eight days, and that he was denied the opportunity to clean himself and otherwise attend to his personal hygiene. Given the nature of the alleged conditions and the extent of Plaintiff's exposure to the conditions, Plaintiff has asserted facts that would support a plausible claim against Defendants Ross, Cantillo, Melquist, Manning, and Drake, who were allegedly directly involved in and responsible for the constant watch process during which Plaintiff was allegedly subjected to the unsanitary conditions.[4]

---

[4] Plaintiff alleges in part that Defendants Ross, Cantillo, Melquist, and Drake are liable under a "supervisory theory." As explained below, Plaintiff's allegations do not support a claim of supervisory liability, but his

9

## 2. Plaintiff's Grievance Procedure Claims

Plaintiff asserts that Defendants Burnham, Ames, Black, and Liberty have not administered the applicable grievance proceedings properly. A prisoner, however, does not have a constitutional right to a particular prison grievance procedure, or even a right to file a prison grievance; rather, the Due Process Clause entitles prisoners to predeprivation process whenever the state subjects them to an "atypical and significant hardship … in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) ("[T]he prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."); *Charriez v. Sec'y, Florida Dep't of Corr.*, 596 F. App'x 890, 895 (11th Cir. 2015) (unpublished) ("Because the prison grievance procedure does not create a protected liberty interest, Charriez does not have a federal constitutional right within that administrative-grievance procedure."); *Von Hallcy v. Clements*, 519 F. App'x 521, 523 (10th Cir. 2013) (unpublished) ("Von Hallcy cannot state a due process claim based on allegations of an ineffective grievance reporting system."); *Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) ("Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless."); *Butler v. Brown,* 58 F. App'x 712 (9th Cir. 2003) ("[A] prisoner has no constitutional right to prison grievance procedures."); *Young v. Gundy,* 30 F. App'x 568, 569 – 70 (6th Cir.

---

allegations would support a finding that Defendants Ross, Cantillo, Melquist, and Drake were directly involved in and responsible for the conditions of the constant watch process.

2002) (unpublished) ("[T]here is no inherent constitutional right to an effective prison grievance procedure.").

Because prison grievance procedures are not mandated or governed by the Constitution or other federal law, Plaintiff has not and cannot assert an actionable federal claim based on the administration of the grievance/complaint process by Defendants Burnham, Ames,[5] Black, and Liberty.

### 3. Plaintiff's Claims Based on Alleged False Report, Search, and Threats

Plaintiff alleges that Defendants Merrifield and Engstfeld filed a false report that they observed Plaintiff placing an unknown object into his mouth, which report led to Plaintiff's placement under constant watch. (ECF No. 1, ¶ 2; ECF No. 15, ¶ 2.) "[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). "There must be more, such as retaliation against the prisoner for exercising a constitutional right." *Id*. (citing *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988)). Here, Plaintiff has alleged no facts to suggest

---

[5] In his amended complaint, Plaintiff further asserts that Defendant Ames refused to investigate Plaintiff's allegations. Contrary to Plaintiff's argument, Defendant Ames's alleged "failure to properly address [Plaintiff's] grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because [Plaintiff] was not deprived of a protected liberty interest." *Torres v. Mazzuca*, 246 F.Supp.2d 334, 342 (S.D.N.Y. 2003). As Defendants note, Plaintiff's reliance on the holding in *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990), is misplaced. In *McHenry*, the Sixth Circuit found that evidence of correction defendants' failure to investigate claims by prisoners in protective custody "relevant to the issue of whether the defendants acted willfully and maliciously" for purposes of determining whether those defendants would be subject to liability for punitive damages, not as the basis for an independent claim. 896 F.2d at 189.

11

that the allegedly false reports by Defendants Merrifield and Engstfeld were made in retaliation for Plaintiff's exercise of his constitutional rights.

Plaintiff's allegations against Defendants Burnham, Engstfeld and Merrifield based on the strip search conducted by them prior to Plaintiff's placement under "constant watch" (Complaint ¶¶ 1-3), also do not state an actionable claim. "Although prisoners experience a reduction in many privileges and rights, a prisoner 'retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Sanchez*, 590 F.3d at 41 (quoting *Turner v. Safley*, 482 U.S. 78, 95 (1987)). A strip search of an inmate as part of prison administration does not require probable cause or articulable suspicion, and it need only be conducted pursuant to a search policy that is "reasonably related to legitimate security interests." *Florence v. Bd. Of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 327-28 (2012) (holding that the programmatic, non-invasive strip-searching of "nonindictable offenders" housed in the general population, without reasonable suspicion, does not violate the Fourth or Fourteenth Amendment). Only strip searches that lack a legitimate purpose and are conducted in a manner designed to humiliate, abuse, or harass prisoners are actionable. *Id.* at 339. *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (applying the Eighth Amendment to claims involving allegations of harassment and humiliation). Although Plaintiff maintains that no contraband was ever found in his cell or in or on his body, he does not allege facts that would support a finding that the search lacked a legitimate

institutional purpose or was motivated by a desire to harass or humiliate. In the absence of such facts, Plaintiff fails to state an actionable claim.[6]

Plaintiff also alleges that while he was under constant watch, Defendants Burnham, Drake and Manning threatened to make Plaintiff "miserable," which eventually led to his agreement to undergo the body cavity search of his mouth. (ECF No. 1, ¶¶ 16, 18; ECF No. 15, ¶ 5.) "The First Circuit has established that '[f]ear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest.'" *Badger v. Correct Care Sols.*, No. 1:15-CV-00517-JAW, 2016 WL 1430013, at *4, 2016 U.S. Dist. LEXIS 48130, at *6 (D. Me. Apr. 11, 2016) (quoting *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991), *abrogated on other grounds*, *Martinez v. Cui*, 608 F.3d 54 (1st Cir. 2010)). *See also Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983."). Because threats, verbal insults and offensive comments do not violate the constitution or give rise to a federal claim, Plaintiff's allegations do not support a federal claim.

---

[6] In their motion, Defendants also argue that Plaintiff fails to state a claim based on the urinalysis test that was conducted by Defendants Burnham, Engstfeld and Merrifield. (ECF No. 13 at 5.) Plaintiff, however, does not appear to assert a claim based on the conduct of the urinalysis, and contends only that he complied with the order to submit to the test and that the results reflected that he was "negative for any kind of illicit or illegal substances." (ECF No. 1, ¶ 3.)

### 4. Plaintiff's Supervisory Liability Claims

Plaintiff seeks to impose supervisory liability on several individuals,[7] including Defendant Liberty, who was the warden of the prison at the time of the alleged constitutional deprivations, Defendant Burnham, who is alleged to be the Commander of the Security and Interior Investigations Unit, and Defendant Black, a grievance review officer.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Moreover, "[p]ersons in a supervisory role … are not liable under § 1983 merely because they are aware of an alleged violation and fail to act—this holds even if the omission is the 'failure [to] remedy the ongoing effects of a constitutional violation.'" *Dyer v. Hardwick*, Civil Action No. 10-cv-10130, 2011 WL 4036681, at *20 (E.D. Mich. Aug. 1, 2011) (quoting *King v. Zamiara*, No. 4:02-cv-141, 2009 WL 1067317, at *2 (W.D. Mich. Apr. 21, 2009)).

"This does not mean, however, that for section 1983 liability to attach, a supervisor must directly engage in a subordinate's unconstitutional behavior." *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016). "Public officials may be held liable under §

---

[7] As mentioned above (n. 6), Plaintiff alleged that Defendants Ross, Cantillo, Melquist, and Drake were also liable under a supervisory theory. Although Plaintiff has alleged sufficient facts to support an Eighth Amendment claim against them, he has not asserted an actionable supervisory claim against them or any of the defendants.

1983 for a constitutional violation only if a plaintiff can establish that his or her constitutional injury 'resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization.'" *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 16 (1st Cir. 2011) (quoting *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 768 (1st Cir. 2010)).

To state a claim on a theory of deliberate indifference, a plaintiff must allege (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) the defendant's failure to take easily available measures to address the risk. *See Figueroa-Torres v. Toledo-Davila*, 232 F.3d 270, 279 (1st Cir. 2000). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410–11 (1997). In addition to showing deliberate indifference, "[c]ausation remains an essential element," which "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." *Guadalupe-Baez*, 819 F.3d at 515. "That is a difficult standard to meet but far from an impossible one. . ." *Id.* Isolated instances of unconstitutional activity ordinarily will not suffice, but "a plaintiff may, for example, prove causation by showing inaction in the face of a 'known history of widespread abuse sufficient to alert a supervisor to ongoing violations.'" *Id.* (quoting *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 582 (1st Cir.1994).

First, as to Plaintiff's alleged claims that are not actionable, Plaintiff has no supervisory claim. *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 n.9 (1st Cir. 2009)

("Because we find there to be no underlying constitutional violation ..., the claims of supervisory liability ... must fail.").

As to Plaintiff's Eighth Amendment claim, Plaintiff has not alleged the conditions to which he was subjected are the product of an official policy or that Defendants Liberty, Burnham and Black had any knowledge of the conditions. Plaintiff therefore, has not asserted an actionable supervisory claim against Defendants Liberty, Burnham and Black.

### C. The Prison Litigation and Reform Act

Citing the Prison Litigation and Reform Act (42 U.S.C. § 1997e) (PRLA), Defendants contend that Plaintiff cannot recover compensatory damages, including damages for an emotional injury, because he has not alleged a physical injury.

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act ...." 42 U.S.C. § 1997e(e). "A number of circuit courts have interpreted 'physical injury' under § 1997e(e) to require an injury to 'be more than de minimis, but need not be significant.'" *Badger v. Correct Care Solutions*, No. 1:15-CV-00517-JAW, 2016 WL 1430013, at *4 (D. Me. Apr. 11, 2016) (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (holding that twisting an inmate's arm behind his back and twisting his ear, causing the ear to bruise for three days, was a de minimis injury), and citing *Mitchell v. Horn*, 318 F. 3d 523, 534 – 35 (3d Cir. 2003) (joining Fifth, Ninth and Eleventh Circuits in adopting de minimis analysis)). *See also*, *e.g.*, *Eason v. Frye*, 972 F. Supp. 2d 935, 947 (S.D. Miss. 2013) (dog bite on buttocks deemed de minimis); *Flynn v. Baker*, No. 1:10-CV-1209, 2013 WL

16

5013517, at *2 (S.D. Ind. Sept. 12, 2013) (rib injury and bite mark on wrist, with allegation of excruciating pain, stated claim for more than de minimis physical injury); *Reaux v. Sibley*, No. 3:09-CV-00407, 2011 WL 2455759, at *5 (M.D. La. May 25, 2011), report and recommendation adopted, No. 3:09-CV-00407, 2011 WL 2447096 (M.D. La. June 14, 2011) ("[S]cratches and a small knot on the forehead are injuries that are so minor they are de minimis.")[8]

As this District has recognized, while the First Circuit has not directly determined whether § 1997e(e) precludes an award of compensatory damages on a claim for deprivation of a constitutional right, the First Circuit "has permitted a prisoner's First Amendment § 1983 claim to proceed without an allegation of physical injury where [the prisoner] requested nominal and punitive damages in addition to compensatory damages." *Williams v. Cutler*, No. 1:14-cv-00539-NT, 2016 WL 1314630, at *7 (D. Me. Mar. 11, 2016) (citing *Kuperman v. Wrenn*, 645 F.3d 69, 73 (1st Cir. 2011)). Significant authority, however, suggests that Plaintiff cannot recover compensatory damages based on Plaintiff's mental or emotional distress. *Mattei v. Dunbar*, 217 F. Supp. 3d 367, 380 (D. Mass. 2016)

---

[8] Plaintiff alleges that the search of his mouth violated PREA, and amounted to an abusive sexual act. (*See* ECF No. 1, ¶ 23.) Under § 1997e(e), a "sexual act" is defined pursuant to 18 U.S. § 2246. The search alleged does not meet the definition of a "sexual act" under the provisions of § 2246(2):
  (A) Contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
  (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
  (C) the penetration, however slight, of the anal or genital opening of another by a hand or fingers or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
  (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arose or gratify the sexual desire of any person.

(collecting opinions from the Second, Third, Fifth, Seventh, Eighth, Tenth, and D.C. Circuits).

In this case, however, Plaintiff has also requested punitive damages. Because the law in this Circuit does not foreclose the award of nominal and punitive damages on a constitutional claim that does not involve physical injury, Plaintiff's remaining claims would be actionable even if the Court concludes that Plaintiff cannot recover any form of compensatory damages. *Kuperman v. Wrenn*, 645 F.3d 69, 72 n.5 (1st Cir. 2011); *Williams*, 2016 WL 1314630, at *7. Under similar circumstances, this Court has reserved judgment on the question whether § 1997e(e) applies to constitutional claims, where the Court could address the matter at a later time. *See Ayotte v. Barnhart*, 973 F. Supp. 2d 70, 83 (D. Me. 2013); *Williams v. Cutler*, No. 1:14-cv-00539-NT, 2016 WL 1314630, at *7 (D. Me. Mar. 11, 2016). A similar approach is appropriate in this case.[9] Defendants, therefore, are not entitled to dismissal based on the PRLA.

### D. Plaintiff's Claims for Injunctive Relief

Defendants argue that under the alleged facts, Plaintiff is not entitled to injunctive

---

[9] Plaintiff also could arguably recover compensatory damages for actual injury. *See*, *e.g.*, *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015) (collecting cases); *Shaheed-Muhammad v. Dipaolo*, 138 F. Supp. 2d 99, 107 (D. Mass. 2001) (Gertner, J.). As the Sixth Circuit explained in *King*, courts have permitted a prisoner to "recover presumed damages for actual injuries caused by constitutional violations that are likely to have occurred but difficult to measure, even when the injury claimed is neither physical harm nor mental or emotional distress." 788 F.3d at 214 (internal quotation marks omitted). Whether Plaintiff's claim involves an "actual" injury under such an analysis is an unresolved issue at this stage of the proceedings. *See id.* (discussing the need for a showing of "specific compensable, non-abstract harm" (quoting *City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547 (7th Cir.1986), *aff'd*, 479 U.S. 1048 (1987))). In any event, because the PRLA does not preclude Plaintiff's claim, at this stage of the proceedings, the Court need not determine whether Plaintiff has alleged or can demonstrate an "actual injury."

relief . "[T]o obtain permanent injunctive relief against a particular practice, a plaintiff must demonstrate that [he] faces a 'real and immediate' threat of re-encountering the behavior." *Levier v. Scarborough Police Dept.*, No. CIV.00-54-P-H, 2000 WL 761003, at *1 (D. Me. May 10, 2000) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). The injury or threat of injury cannot be conjectural or hypothetical. *Lopez v. Garriga*, 917 F.2d 63, 67 (1st Cir. 1990) (citing *Lyons*, 461 U.S. at 101-02). Plaintiff has not alleged that he is continuing to be subjected to the treatment that forms the basis of his Eighth Amendment claim, nor does he suggest that he will be subjected to that same treatment again. Dismissal of Plaintiff's claim for injunctive relief, therefore, is warranted.

## CONCLUSION

Based on the foregoing analysis, I grant Plaintiff's motion to amend the complaint. In addition, I recommend the Court dismiss Plaintiff's claims based on the grievance procedure, and the alleged threats, strip search and false report. Furthermore, I recommend the Court dismiss Plaintiff's supervisory liability claims, as well as Plaintiff's claims for permanent injunctive relief. If the Court adopts this recommendation, Plaintiff would proceed on his Eighth Amendment claim for damages against Defendants Ross, Cantillo, Melquist, Manning, and Drake.

## **NOTICE**

Any objection to the order granting the motion to amend shall be filed in accordance with Federal Rule of Civil Procedure 72.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen

19

(14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

      Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

                                  /s/ John C. Nivison
                                  U.S. Magistrate Judge

Dated this 29th day of January, 2020.