## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

DARIEN HARRIS,

              Plaintiff,

   v.

TERRY SCOTT DRAKE, et al.,

              Defendants.

Case No. 1:19-cv-00346-LEW

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## WITH INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 56, Defendants Anthony Cantillo, Terry Scott Drake, Jeremiah Manning, Christian Melquist, and Troy Ross move for summary judgment in their favor on Plaintiff's claim related to the alleged unsanitary conditions of his confinement while on a constant contraband watch. There are no issues of material fact, and Defendants are entitled to judgment as a matter of law.

Plaintiff commenced this suit on or about July 25, 2019, asserting a variety of claims against 11 named defendants. (ECF 1.) In response to a motion to dismiss, the Court dismissed all claims based "on the grievance procedure, and the alleged threats, strip search[,] and false report" and all claims based on "supervisory liability" and those seeking "permanent injunctive relief." (ECF 20 at 19; ECF 24 at 1.) Plaintiff was permitted to "proceed _only_ on his Eighth Amendment claim against Defendants Ross, Cantillo, Melquist, Manning, and Drake for subjecting him to unsanitary conditions of confinement." (ECF 24 at 1-2 (emphasis added).)

Plaintiff's remaining claim is based on the time he spent on a constant contraband watch from September 5, 2018, to September 13, 2018. During a search of Harris's person for drugs, a corrections officer witnessed Plaintiff turn around and away from the officers and take something from his belly button, put it in his mouth, and swallow it. Plaintiff was then removed from his cell and taken to a dry cell in the Special Management Unit (SMU) for a constant contraband watch. This was not Plaintiff's first contraband watch; Plaintiff had been on a contraband watch in January of 2018 on suspicion of drug trafficking.

Defendants are entitled to summary judgment for two reasons. First, Defendants did not violate Plaintiff's constitutional rights because Plaintiff was not subject to inhumane conditions or deliberately indifferent to Plaintiff's requests. Although Plaintiff claims he was kept in unsanitary conditions in September of 2018, the undisputed facts show that Harris's dry cell in the SMU was clean, he was provided with a clean mattress, sheet, and boxer shorts and replacements for these items upon his request, and he was able to and did wash his hands. Plaintiff never requested a shower or otherwise informed Defendants that his body or boxer shorts were soiled with his own waste, nor is there any contemporaneous documentation corroborating Plaintiff's claim.

Moreover, and even assuming *arguendo* that any Defendant violated Plaintiff's constitutional rights based on the conditions of his confinement, Defendants are entitled to qualified immunity from Plaintiff's claims. It was not clearly established that the conditions Plaintiff alleges to have experienced on contraband watch were unconstitutional, and an objectively reasonable corrections officer would not have known that his conduct violated the law. Consequently, Defendants should be granted summary judgment on Plaintiff's Eighth Amendment claim.

Second, Defendants are entitled to summary judgment on Plaintiff's claim for compensatory and punitive damages, as Plaintiff did not sustain a physical injury in this matter. Because federal law bars the recovery of compensatory damages in actions filed by prisoners without proof of physical injury, Defendants move for summary judgment on Plaintiff's claims for damages.

### SUMMARY OF FACTS

Darrien Harris was incarcerated at the Maine State Prison from June 20, 2017, to August 12, 2020.  (Defendants' Statement of Material Facts (hereinafter, "DSMF") ¶ 1.)  On September 5, 2018, Harris was housed in the 500 Unit of the prison.  (DSMF ¶ 7.)  That morning, Harris was strip-searched in an attempt to recover contraband, i.e., illegal drugs, from his person.  (DSMF ¶¶ 8-9.)  Officers suspected Harris trafficked drugs and hid them in his mouth or in his belly button.  (DSMF ¶ 13.)  During the strip search, when officers asked to see Harris's belly button, Harris turned toward the back of the cell.  (DSMF ¶ 9.)  Officers saw in the window reflection that Harris removed something from his belly button, put it into his mouth, and swallowed it.  (DSMF ¶ 9.)  Officers believed this object was illegal drugs.  (DSMF ¶ 9.)

Harris was then placed on a constant contraband watch and moved to cell on the third floor of the SMU at the prison.  (DSMF ¶ 10.)  Harris was on contraband watch in the SMU from September 5, 2018, to September 13, 2018.  (DSMF ¶ 12.)

Harris's 8 days on contraband watch in September of 2018 was Harris's second contraband watch.  (DSMF ¶ 81.)  Harris had been on a constant contraband watch for 6 days in January of 2018 because officers again suspected Harris was trafficking in drugs.  (DSMF ¶ 82.)  On January 13, 2018, Harris and a female visitor were observed making suspicious mouth movements during a kiss that were consistent with passing drugs for trafficking in the prison.

(DSMF ¶ 83.)   No contraband was recovered from Harris as a result of the January 2018 contraband watch, but Harris was viewed as being very knowledgeable in ways of "beating" the watch, i.e., knowing how to keep contraband hidden.  (DSMF ¶¶ 85-86.)

The goal of a contraband watch is to recover the hidden or ingested contraband.  Inmates on a contraband watch are placed in a cell with a large observation window and observed 24 hours a day.  (DSMF ¶ 14.)  During a contraband watch, there is one officer on duty at all times whose only responsibility it is to observe the inmate at all times.  (DSMF ¶ 16.)  That officer is called the constant watch officer.  (DSMF ¶ 16.)  The constant watch officer keeps a log of all the inmate's activities and records them at least every 15 minutes.  (DSMF ¶ 17.)

Harris arrived in the SMU and was placed in a clean cell, where he was seen and cleared by medical personnel.  (DSMF ¶¶ 15, 19, 26.)  The cell contained a bench and a mattress, but it was a dry cell, meaning it cell did not have a toilet, sink, or running water.  (DSMF ¶ 20, 26.)  Inmates on contraband watch are placed in a dry cell in order to prevent disposal of any contraband in a toilet or in a sink.  (DSMF ¶ 21.)  Similarly, inmates on contraband watch are not permitted to shower so they cannot dispose of contraband in the shower water or down the drain.  (DSMF ¶ 22.)   The excrement of inmates on contraband watch is searched for contraband.  (DSMF ¶ 23.)

Inmates on contraband watch are allowed a sheet, a mattress, and a pair of boxer shorts and provided fresh replacements of these items on request.  (DSMF ¶¶ 24-25.)  The inmate is responsible for requesting fresh items.  (DSMF ¶ 25.)  Harris was provided with all these items when he started his contraband watch, (DSMF ¶¶ 26, 29-30, 35), and he received replacements of all of these items while he was on contraband watch, (DSMF ¶¶ 26-28, 32).

Harris also received medical services while he was on contraband watch in the SMU. (DSMF ¶¶ 33-38.)  The treatment and progress notes from those medical services include no complaints from Harris about the cleanliness of his cell or his clothing.  (DSMF ¶¶ 33-38.)  Harris received three meals a day at regular intervals like all other prisoners; Harris ate his meals outside the dry cell.  (DSMF ¶¶ 40-43.)  Harris was provided with drinking water upon request.  (DSMF ¶ 44.)  Harris was also allowed to and did in fact wash his hands.  (DSMF ¶¶ 60-62.)

Most of the Defendants in this case had little to no interaction with Harris while he was on contraband watch and were not personally involved in making decisions regarding the conditions of his confinement.  None of the Defendants served as the constant watch officer during Harris's contraband watch (DSMF ¶ 76), and Defendants Cantillo, Drake, Melquist, and Ross were not assigned to the SMU or responsible for the conditions of Harris's confinement (DSMF ¶ 75).  Defendants Drake, Melquist, and Ross did not meet with Harris or see Harris while he was on contraband watch and do not recall ever having a conversation with him. (DSMF ¶¶ 77-78.)  Defendant Cantillo saw Harris only once during Harris's contraband watch in an encounter that lasted less than 5 minutes.  (DSMF ¶¶ 45-47.)  Harris did not make any complaints to Defendants Cantillo, Drake, Melquist, and Ross regarding the conditions of his confinement while Harris was on contraband watch, and Defendants Cantillo, Drake, Melquist, and Ross were not aware of any alleged insufficiencies in Harris's treatment.  (DSMF ¶¶ 79-80.)

Sergeant Manning was on duty at the SMU and present at the prison on 4 days of Harris's contraband watch.  (DSMF ¶¶ 48-50.)  Sergeant Manning saw Harris periodically during his shifts, including when he escorted Harris to the bathroom.  (DSMF ¶ 50.)  Whenever Sergeant Manning saw Harris in his cell, the cell was clean, Harris had a mattress and a sheet, and he was wearing boxer shorts.  (DSMF ¶¶ 51-52.)  Sergeant Manning never saw human excrement in

Harris's cell or on the cell walls, and the constant watch log does not include a notation that Harris's cell was unsanitary or that it contained human waste.  (DSMF ¶¶ 52-54.)

Every time Harris informed MDOC staff that he had to urinate or defecate, he was placed in four-point restraints, removed from the constant watch cell, and escorted to the bathroom.  (DSMF ¶¶ 55-56.)   The bathroom also contained a portable toilet, similar to those used in hospitals; Harris was only allowed to use the portable toilet and was provided with toilet paper.  (DSMF ¶¶ 56-57.)  An officer searched Harris's excrement for contraband.  (DSMF ¶ 58.)

Sergeant Manning never saw excrement in Harris's boxer shorts or saw Harris not utilize the toilet paper provided.  (DSMF ¶ 59.)  Harris did not tell Sergeant Manning that his body or boxer shorts were soiled with excrement, nor is there any such notation in the constant watch log.  (DSMF ¶¶ 64-65.)  Harris did not ask Sergeant Manning if he could shower or make a request for a shower to Sergeant Manning, nor did Harris complain about the temperature.  (DSMF ¶¶ 63, 67-68; *see also* DSMF ¶ 11 (describing temperature controls of SMU).)

Harris remained on contraband watch until September 13, 2018, and he returned to the 500 Unit.  (DSMF ¶ 68.)  Upon his return to the 500 Unit, Harris did not report a physical injury or request any medical services for any alleged physical injury related to the contraband watch.  (DSMF ¶¶ 69-74.)

**SUMMARY JUDGMENT STANDARD**

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *Cortes-Rivera v. Dep't of Corr. & Rehab. of Commonwealth of P.R.*, 626 F.3d 21, 26 (1st Cir. 2010).  A non-moving party may "defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists."  *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir.

2006).  A nonmovant, however, "cannot rely on speculation to avoid summary judgment." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 136 (1st Cir. 2013); *see also Ahern v. Shinseki*, 629 F.3d 49, 58 (1st Cir. 2010) ("Conclusions that rest wholly on speculation are insufficient to defeat a motion for summary judgment.").

## ARGUMENT

**I.    Defendants Did Not Violate Plaintiff's Constitutional Rights and Defendants Are Nevertheless Entitled to Qualified Immunity on Plaintiff's § 1983 Claim.**

Plaintiff Harris asserts a claim against Defendants pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment Rights by failing to provide sanitary confinement conditions during his 8-day contraband watch.  First, Defendants did not violate Plaintiff's constitutional rights, and even assuming *arguendo* that Defendants' actions fell below the constitutional norm, Defendants are entitled to qualified immunity from Plaintiff's claims.

In a § 1983 claim, a government official may raise the defense of qualified immunity to seek "protection from civil damages liability for actions taken under color of state law."  *Gray v. Cummings*, 917 F.3d 1, 9 (1st Cir. 2019).  When such a defense is raised, the government official is entitled to qualified immunity "when his actions, though causing injury, did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 10 (quotation marks omitted).  The protection afforded by qualified immunity "attaches to all but the plainly incompetent or those who knowingly violate the law."  *Id.* at 9-10 (quotation marks omitted).

To determine whether a government official is entitled to qualified immunity, a court must engage in a two-part analysis: "The court must determine whether the defendant violated the plaintiff's constitutional rights and then must determine whether the allegedly abridged right was clearly established at the time of the defendant's claimed misconduct."  *Id.* at 10 (quotation

7

marks omitted).  The second part of the qualified immunity analysis has two components:

> First, the plaintiff must identify either controlling authority or a consensus of cases of persuasive authority sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm.  Second, the plaintiff must demonstrate that an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law.

*Gray*, 917 F.3d at 9-10 (cleaned up).

The Eighth Amendment guarantees an individual the right to be free from cruel and unusual punishment.  U.S. Const. amend. VIII; *see Ingraham v. Wright*, 430 U.S. 651, 664-71 (1977) (discussing the history and parameters of the Eighth Amendment's prohibition on cruel and unusual punishment).  However, not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment protections.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  It is well-established that "[a]fter incarceration, only the 'unnecessary and wanton infliction of pain,' constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Ingraham*, 430 U.S. at 670 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (citation omitted)); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.").  In general, a plaintiff may assert a claim under the Eighth Amendment "by challenging either: (1) the deliberate indifference to serious medical need; (2) the specific conditions of confinement; or (3) the excessive use of force."  *McNeeley v. Wilson*, 649 F. App'x 717, 721 (11th Cir. 2016) (unpublished).

"[T]he Constitution does not mandate comfortable prisons."  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  The Eighth Amendment is only violated by those deprivations which deny "the minimal civilized measure of life's necessities," *id.* at 347, which means that inmates must

not be deprived of "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993).

In order to establish a constitutional violation, a plaintiff's claim must meet both objective and subjective criteria. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

> First, the plaintiff must establish that, from an objective standpoint, the conditions of his confinement deny him the minimal measure of necessities required for civilized living. Second, the plaintiff must show that, from a subjective standpoint, the defendant was deliberately indifferent to inmate health or safety. Deliberate indifference, in this sense, is a mental state akin to criminal recklessness.

*Surprenant v. Rivas*, 424 F.3d 5, 18–19 (1st Cir. 2005) (citing *Farmer*, 511 U.S. at 834, 836-37). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

In this matter, the Defendants are entitled to summary judgment in their favor on Plaintiff's claims, as Defendants' actions did not violate Plaintiff's constitutional rights under the Eighth Amendment. Nevertheless, even assuming *arguendo* that Defendant did violate Plaintiff's constitutional rights, Defendants would be entitled to qualified immunity, as the conditions of confinement Harris alleges he faced did not violate any clearly established law relating to the application of the Eighth Amendment.

### A.    Harris suffered no Eighth Amendment violation while on contraband watch.

Harris claims that the conditions he experienced on contraband watch violated the Eighth Amendment, specifically alleging that his cell was cold and unclean, he could not maintain his personal hygiene, and that he was denied clean bedding, showers, and clean clothing. (ECF 1 at ¶¶ 3-5, 7-8, 11.) The undisputed facts show, however, that Harris was placed in a clean constant

watch cell that was not unsanitary or covered in any human fluids or excretions. (DSMF ¶¶ 15, 52-53.) There is no contemporaneous documentation showing that the cell was cold or became unclean or unsanitary at any point during Harris's contraband watch, and Harris himself was taken out of the cell to eat, urinate, and defecate. (DSMF ¶¶ 41, 52-53, 55, 67.)

Harris was provided with a mattress, a sheet, and a pair of boxer shorts and replacements of these items on request. (DSMF ¶¶ 26-30, 32, 35.) Although Harris was not allowed to shower while on contraband watch, that was because of the risk that he would dispose of contraband in the shower water or down the drain. (DSMF ¶ 22.) Harris may have been uncomfortable from the lack of shower, but Harris was permitted to and did in fact wash his hands after using the bathroom. (DSMF ¶¶ 60-62.) *Farmer*, 511 U.S. at 837 ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"). Moreover, Harris was provided with food, water, and medical attention while on contraband watch. (DSMF ¶¶ 33-44.)

In sum, these conditions do not constitute cruel and unusual punishment or conditions "contrary to current standards of decency for anyone to be exposed against his will." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Centeno v. Wilson*, No. 1:08–CV–1435–FJM, 2011 WL 836747, *3 (E.D. Cal. Mar. 4, 2011), *aff'd*, 479 Fed. App'x. 101 (9th Cir. 2012) ("Plaintiff contends that . . . he was forced to sleep on a cold floor without a mattress or blanket for 7 days and was unable to shower while in [contraband watch] confinement[. T]he living conditions experienced by plaintiff for this limited duration were not so extreme as to violate contemporary standards of decency and rise to the level of a constitutional deprivation" when he "received adequate food, clothing, shelter, and medical care while in [contraband watch] confinement"); *Raybon v. Totten*, No. 2:12-cv-1008-GEB-EFB P, 2014 WL 3867433, *5 (E.D. Cal. Aug. 6,

10

2014), *adopted*, 2014 WL 4656202 (E.D. Cal. Sep. 16, 2014) ("Because there is no evidence that the conditions of confinement during plaintiff's sixteen day stay on [contraband watch] posed an excessive risk to his health or safety, plaintiff has necessarily failed to establish that [defendants] knew of and disregarded such a risk.").

> **B.      Defendants Cantillo, Drake, Melquist, and Ross had no knowledge of or involvement with the conditions Harris faced during the contraband watch.**

The Supreme Court has held that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.  Here, the undisputed facts demonstrate that the conduct of Cantillo, Drake, Melquist, and Ross did not violate Plaintiff's constitutional rights because they were not aware of the conditions of Harris's confinement and therefore did not disregard any risk of harm.

The record shows the following with respect to these defendants: they had either no interaction or a single interaction with Harris during his contraband watch;[1] they were not assigned to the SMU during Harris's contraband watch and did not serve as the constant watch officer; they were not aware of any insufficiencies in his treatment; they did not receive any complaints from Harris regarding the sanitation of his cell or other conditions of his confinement; they were not personally responsible for the conditions Harris experienced on contraband watch; and Harris suffered no physical injury as a result of his contraband watch. (DSMF ¶¶ 75-80.)  Because Cantillo, Drake, Melquist, and Ross were not involved in Harris's contraband watch and were not aware of the specific conditions of his confinement, they are entitled to summary judgment because they did not violate any constitutional right of the

---

[1] Cantillo's only interaction with Harris while he was on contraband watch was less than 5 minutes.

Plaintiff.  *See Morisette v. Peters*, 45 F.3d 1119, 1122-23 (7th Cir. 1995) (affirming summary judgment when plaintiff "presented no evidence any of the defendants were even remotely aware of the conditions in his cell").

Similarly, because Cantillo, Drake, Melquist, and Ross were not involved in Harris' contraband watch, they are likewise entitled to qualified immunity.  *See Lakin v. Barnhart*, 758 F.3d 66, 72 (1st Cir. 2014) (prison officials entitled to qualified immunity when "no reasonable jury" could determine plaintiff's Eighth Amendment rights were violated); *McNeill v. Melvin*, No. 5:12-CT-3169-FL, 2014 WL 4701592, at *7 (E.D.N.C. Sept. 22, 2014) (holding defendants entitled to qualified immunity when plaintiff did "not produce[] any evidence to show that any defendant knew of and disregarded any unsanitary cell condition").

### C.      Defendant Manning did not violate Harris's Eighth Amendment rights nor was he deliberately indifferent to Harris's needs.

Defendant Manning did work in the SMU, but only on four days during Harris's contraband watch.  (DSMF ¶¶ 48-50.)  During his shifts, Sergeant Manning did not observe or subject Harris to any conditions that denied Harris "the minimal measure of necessities required for civilized living."  *Suprenant*, 424 F.3d at 18-19.  Sergeant Manning saw Harris periodically during his shifts, including when he escorted Harris to the bathroom.  (DSMF ¶ 50.)  Whenever Sergeant Manning saw Harris in his cell, the cell was clean, Harris had a mattress and a sheet, and he was wearing boxer shorts.  (DSMF ¶¶ 51-52.)  Sergeant Manning never saw human excrement in Harris's cell or on the cell walls, and the constant watch log does not include a notation that Harris's cell was unsanitary or that it contained human waste.  (DSMF ¶¶ 52-54.)

Sergeant Manning never saw excrement in Harris's boxer shorts or saw Harris not utilize the toilet paper provided.   (DSMF ¶ 59.)   Sergeant Manning always offered Harris the opportunity to wash his hands after using the bathroom.  (DSMF ¶¶ 60-61.)  These facts show

that Sergeant Manning did not observe or participate in any Eighth Amendment violation when he was on shift.

Moreover, Sergeant Manning was not deliberately indifferent to Harris's condition or his safety. *See, e.g., Wilson v. Seiter*, 501 U.S. 294 (1991) (to transgress the eighth amendment in a prison context, the offending conduct must constitute "deliberate indifference" to the inmate's rights). The facts show that Harris never told Sergeant Manning that his body or boxer shorts were soiled with excrement, nor is there any such notation in the constant watch log. (DSMF ¶¶ 64-65.) If he had done so, Sergeant Manning would have provided Harris with fresh boxer shorts because Sergeant Manning has never denied an inmate, including Harris, a request for a replacement sheet, mattress, or pair of boxer shorts. (DSMF ¶ 51.) Similarly, if Harris's cell was or had become unclean or unsanitary at any time, it would have been cleaned. (DSMF ¶¶ 52-53.)

Further, Harris did not ask Sergeant Manning if he could shower or make a request for a shower to Sergeant Manning, nor did Harris complain about the temperature. (DSMF ¶¶ 63, 67-68; *see also* DSMF ¶ 11 (describing temperature controls of SMU).) The constant watch log likewise contains no notation or indication that Harris complained about the temperature or requested to shower. (DSMF ¶ 65.)

Because Defendant Manning did not purposefully deny Plaintiff any minimum necessity of life, such as food, shelter, medical care, and because Plaintiff did not request anything from Defendant Manning, Plaintiff cannot establish that Defendant acted with deliberate indifference. *See Farmer*, 511 U.S. at 845 ("Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.").

**D.      Any violation of Plaintiff's rights was not clearly established.**

In the second aspect of the qualified immunity analysis, the Court must determine "whether the allegedly abridged right was 'clearly established' at the time of the defendant's claimed misconduct." *Gray*, 917 F.3d at 10 (quotation marks omitted).  Even assuming Harris faced the conditions he claims to have faced for a brief eight days (cold, dirty, un-sanitized cell, with dried bodily fluids on the walls), those conditions did not clearly establish a violation of the Eighth Amendment, and Defendants are entitled to qualified immunity.  *See Chappell v. Mandeville*, 706 F.3d 1052, 1061-62 (9th Cir. 2013) (plaintiff's placement on contraband watch for 7 days in four point restraints, chained to a bed, and without a mattress was not a clear violation of the Eighth Amendment); *Smith v. Copeland*, 87 F.3d 265, 269 & n. 3 (8th Cir. 1996) (finding no violation when prisoner was confined to cell with overflowed toilet for four days); *Morissette v. Peters*, 45 F.3d 1119, 1122–23 n.6 (7th Cir.1995) (plaintiff's confinement in "filthy" cell for nine days without adequate cleaning supplies did not violate Eighth Amendment); *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (no constitutional violation found where prisoner was deprived of toilet paper for five days and soap, toothpaste and toothbrush for ten days while being kept in a filthy, roach infested cell); *Raybon*, 2014 WL 3867433, *4-5 (16-day deprivation of toothbrush, toothpaste, soap, showers, and bedding during a constant watch did not pose an excessive risk to inmate's safety and was not Eighth Amendment violation); *Mendoza v. Blodgett*, No. C–89–770–JMH, 1990 WL 263527, at *4–5 (E.D. Wash. Dec. 21, 1990), *aff'd on other grounds*, 960 F.2d 1425 (9th Cir.1992) (no constitutional violation when prisoner on a feces watch was afforded minimal clothing in a dry cell and watched while urinating and defecating).  *But cf. Taylor v. Riojas*, 141 S. Ct. 52, ---

(2020) (officers who placed inmate in a pair of "shockingly unsanitary cells" covered in human waste and raw sewage for a period of six days were not entitled to qualified immunity).

Additionally, Plaintiff cannot demonstrate that there is sufficient authority to "send a clear signal" to a reasonable official that Defendants' conduct falls below the constitutional norm, and further that "an objectively reasonable official" in any Defendant's position "would have known that his conduct violated that rule of law." *Gray*, 917 F.3d at 9-10 (quotation marks omitted). Harris never complained about the conditions of his confinement to any Defendant while he was on contraband watch and therefore Defendants would not have known their conduct violated the Eighth Amendment, particularly in light of the contraband watch policies in place. In summary, the record demonstrates that Defendants acted reasonably and therefore are entitled to qualified immunity.

## II.     Defendants are Entitled to Summary Judgment on Plaintiff's Damages Claim.

Pursuant to the Prison Litigation Reform Act, a prisoner's relief in federal civil actions is limited. *See* 42 U.S.C.A. § 1997e(e). Specifically, section 1997e(e) provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

42 U.S.C.A. § 1997e(e).

The First Circuit has yet to decide whether the limitation in section 1997e(e) on damages applies to constitutional claims. *See Kuperman v. Wrenn*, 645 F.ed 69, 73 n.5 (1st Cir. 2011). However, this Court has addressed the application of section 1997e(e) in the context of a prisoner's federal action alleging violations of the First Amendment and the Religious Land Use and Institutionalized Persons Act. *Robinson v. Landry*, No. 2:15-CV-58-DBH, 2015 WL 4077297, at *2 (D. Me. July 6, 2015). In the *Robinson* matter, this Court dismissed a prisoner's

15

claim for damages where the prisoner sought relief for anxiety and emotional distress but had not alleged a physical injury. *Id.*; *see also Schoff v. Fitzpatrick*, No. 2:16-CV-00609-NT, 2018 WL 1185499, at *9 (D. Me. Mar. 7, 2018), *adopted*, 2018 WL 4473093 (D. Me. Sept. 18, 2018) (where this Court reasoned that although the First Circuit had not decided whether section 1997e(e) barred compensatory damages for constitutional claims, "persuasive authority suggests that Plaintiff cannot recover monetary relief based on Plaintiff's mental or emotional distress.").

In this matter, Plaintiff has not alleged or shown a physical injury sufficient to withstand summary judgment on the issue of damages.  Plaintiff suffered no physical injury and his recovery is therefore limited.  For the above reasons, Defendant respectfully moves for summary judgment on Plaintiff's claim of damages, as there exists no genuine issue of material fact. *Herman v. Holiday*, 238 F.3d 660, 666 (5th Cir. 2001) (affirming summary judgment for defendants on plaintiff's Eighth Amendment conditions of confinement claim when plaintiff alleged no physical injury from exposure to asbestos and "cold showers, cold food, unsanitary dishes, insect problems, a lack of adequate clothing, and the presence of an open 'cesspool' near the housing unit").

## CONCLUSION

For the reasons stated above, Defendants respectfully requests that the Court enter summary judgment in their favor as to Plaintiff's claim.  In addition, Defendants move for summary judgment on the issue of damages and respectfully submits that Plaintiff's claim for damages is barred by federal law.

AARON M. FREY
Attorney General

Dated:  December 28, 2020

/s/ Kimberly L. Patwardhan
KIMBERLY L. PATWARDHAN
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel. (207) 626-8800
kimberly.patwardhan@maine.gov

Attorney for Defendants

## CERTIFICATE OF SERVICE

      I, Kimberly L. Patwardhan, hereby certify that on December 28, 2020, I electronically filed the above document with the Clerk of Court using the CM/ECF system, and that a copy of such filing was sent by First Class U.S. Mail to the following:

      Darien Harris
      1088 Willett St.
      Schenectady, NY 12303

                     /s/ Kimberly L. Patwardhan
                     KIMBERLY L. PATWARDHAN
                     Assistant Attorney General
                     Office of the Attorney General
                     6 State House Station
                     Augusta, ME 04333-0006
                     Tel. (207) 626-8800
                     kimberly.patwardhan@maine.gov

                     Attorney for Defendants

18