UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DARIEN HARRIS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:19-cv-00346-LEW |
| | ) | |
| RANDALL LIBERTY, et al., | ) | |
| | ) | |
| Defendants | ) | |

## RECOMMENDED DECISION ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, a former inmate at the Maine State Prison, alleges that in violation of the Eighth Amendment to the United States Constitution, Defendants Anthony Cantillo, Terry Scott Drake, Jeremiah Manning, Christian Melquist, and Troy Ross subjected him to unsanitary conditions over an eight-day period of his confinement in September 2018. (Complaint, ECF No. 1; Amended Complaint, ECF No. 22.)  Plaintiff asserts his claim pursuant to 42 U.S.C. § 1983.  Defendants have moved for summary judgment. (Motion, ECF No. 45.)

Following a review of the summary judgment record and after consideration of the Defendants' arguments, I recommend the Court grant Defendants' motion for summary judgment.

### BACKGROUND

**A.     Procedural Background**

On July 25, 2019, Plaintiff filed a complaint alleging that the named defendants violated his constitutional rights over an eight-day period in September 2018.[1] (Complaint, ECF No. 1.) Plaintiff alleged, in part, that his cell was "unsanitized," he was unable "to bathe and address [his] personal hygiene needs," and his body and underwear were covered with his own waste. (*Id.* ¶¶ 4-10.) Defendants filed a motion to dismiss Plaintiff's claims on November 14, 2019. (Motion to Dismiss, ECF No. 13.) On December 20, 2019, Plaintiff responded to the motion to dismiss and moved to amend his complaint. (Response, ECF No. 14; Motion to Amend, ECF No. 15.) The Court granted the motion to amend and granted in part the motion to dismiss. (Recommended Decision, ECF No. 20; Order on Motion to Amend, ECF No. 21; Order Affirming Recommended Decision, ECF No. 24.) As a result, Plaintiff was permitted to proceed on his Eighth Amendment claim against Defendants Ross, Cantillo, Melquist, Manning, and Drake.

On December 28, 2020, Defendants filed their motion for summary judgment. (Motion, ECF No. 45.) Plaintiff did not file an opposition to the motion.[2]

**B.      Summary Judgment Record**

When presented with a summary judgment motion, a court ordinarily considers only the facts included in the parties' statements of material facts, which statements must be supported by citations to evidence of record. Federal Rule of Civil Procedure 56(c) and

---

[1] Plaintiff's complaint originally asserted claims against Maine Department of Corrections Commissioner Randall Liberty, ten employees of the Maine State Prison, and John Does 1-8. (Complaint at 1.)

[2] The record reflects that Plaintiff has been released from the Maine State Prison and that Plaintiff provided the Court with his new address. (Notice, ECF No. 42; Mail, ECF No. 47.) Defendants certified that a copy of the motion for summary judgment was mailed to Plaintiff at his new address. (Motion at 18.)

District of Maine Local Rule 56(b)-(d) require the specific citation to record evidence. In addition, Local Rule 56 establishes how parties must present their factual statements and the evidence on which the statements depend. A party's pro se status does not relieve the party of the obligation to comply with the court's procedural rules. *Ruiz Rivera v. Riley*, 209 F.3d 24, 27-28 & n. 2 (1st Cir. 2000); *Marcello v. Maine*, 489 F. Supp. 2d 70, 77 (D. Me. 2007).

By rule, a party seeking summary judgment must file, in addition to its summary judgment motion, a supporting statement of material facts setting forth each fact in a separately numbered paragraph, with each factual statement followed by a citation to evidence of record that supports the factual statement. D. Me. Loc. R. 56(b). A party opposing a motion for summary judgment must file an opposing statement in which it admits, denies, or qualifies the moving party's statements by reference to each numbered paragraph, with citations to supporting evidence, and in which it may set forth additional facts, in separately numbered paragraphs, with citation to supporting evidence. D. Me. Loc. R. 56(c). "Facts contained in a supporting ... statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." D. Me. Loc. R. 56(f).

Plaintiff did not file a response to Defendants' supporting factual statement or a statement of additional material facts. *See* D. Me. Loc. R. 56(c). The Court thus deems as

admitted the facts contained in Defendants' supporting statement of material facts.[3] *See* D. Me. Loc. R. 56(f).

## C. Factual Background

### 1. September 2018 "Contraband Watch"

Plaintiff was incarcerated at the Maine State Prison from June 20, 2017, to August 12, 2020. (Defendants' Statement of Material Facts (DSMF) ¶ 1, ECF No. 43.) On September 5, 2018, Plaintiff was strip searched to recover contraband. (*Id.* ¶ 8.) During the search, an officer asked to see Plaintiff's navel, but Plaintiff turned toward the back of his cell. (*Id.* ¶ 9.) The officer then saw Plaintiff remove something from his navel, put it into his mouth, and swallow it. (*Id.*) The officer believed the item was drugs. (*Id.*) Officers at the prison had suspected that Plaintiff trafficked drugs and hid them in his mouth or navel.[4] (*Id.* ¶ 13.)

---

[3] "[T]he Court is required to maintain a strict neutrality between opposing parties and even though a more forgiving reading may be appropriate for a pro se party in the summary judgment context, it is also true that '[j]udges and magistrate judges who review these filings must be able to rely on procedural rules so as to avoid becoming the lawyer for the unrepresented [party] or devoting an excessive portion of their time to such cases.'" *United States v. Baxter*, 841 F. Supp. 2d 378, 383 (D. Me. 2012) (quoting *Clarke v. Blais*, 473 F. Supp. 2d 124, 129 (D. Me. 2007)). While in some instances, a court might consider the assertions in a pro se verified complaint when assessing the merits of a summary judgment motion, *see, e.g.*, *Demmons v. Tritch*, 484 F. Supp. 2d 177, 182 - 83 (D. Me. 2007), in this case, although Plaintiff's complaint bears a notary stamp, the pleading lacks any assertion by Plaintiff or the notary that Plaintiff has asserted the allegations in the complaint are made under the penalty of perjury. Accordingly, neither Plaintiff's complaint nor his amended complaint can be considered a verified pleading. Furthermore, consideration of a pro se's verified pleadings is more appropriate where the plaintiff has filed an opposition to the motion but might not have strictly complied with the applicable procedural rules. In this case, Plaintiff has not filed any opposition to the motion.

[4] Plaintiff had previously been on contraband watch for six days in January 2018 after officers suspected that a visitor to the prison had passed drugs to Plaintiff. (DSMF ¶¶ 81-84.) During the January 2018 contraband watch, no drugs were recovered from Plaintiff. (*Id.* ¶ 85.)

Plaintiff was then placed on emergency observation status for a constant contraband watch. (*Id.* ¶ 10.) Inmates on a contraband watch are placed in a cell with a large window and observed 24 hours a day. (*Id.* ¶ 14.) During a contraband watch, one officer—the constant watch officer—is always on duty. (*Id.* ¶ 16.) The constant watch officer's sole responsibility is to observe the inmate. (*Id.*) The constant watch officer keeps a log of all the inmate's activities and records them at least every 15 minutes. (*Id.* ¶ 17.)

The cell for inmates on contraband watch is a "dry cell" without a toilet, sink, or running water in order to prevent disposal of any contraband in a toilet or in a sink. (Id. ¶¶ 20-21.) Additionally, inmates on contraband watch are not permitted to shower in order to prevent disposal of any contraband down the drain. (*Id.* ¶ 22.) The excrement of inmates on contraband watch is searched for contraband. (*Id.* ¶ 23.) Inmates on contraband watch are allowed a sheet, a mattress, and a pair of boxer shorts; they are allowed a fresh sheet, mattress, and pair of boxer shorts upon request. (*Id.* ¶¶ 24-25.) Inmates are not permitted other clothing because they could hide contraband in the clothing. (*Id.* ¶ 31.) While on contraband watch, inmates may request medical services or mental health services, and are provided three meals a day. (*Id.* ¶¶ 33, 40.)

Plaintiff was on contraband watch from September 5, 2018, to September 13, 2018. (*Id.* ¶¶ 12, 68.) He was assigned to a cell on the third floor of the prison's Special Management Unit ("SMU"), which is its own building and consists of three floors. (*Id.* ¶¶ 10-11.) Upon his arrival, Plaintiff was seen by medical staff and no medical issues were noted. (*Id.* ¶ 19.) Plaintiff was placed in a clean cell with a large observation window and was observed by the constant watch officer. (*Id.* ¶¶ 15, 18.) Plaintiff's cell was a "dry

cell." (*Id*. ¶ 20.) The cell contained a bench and a mattress, and Plaintiff was provided with a sheet. (*Id.* ¶ 26.) Plaintiff wore only boxer shorts while on contraband watch. (*Id.* ¶ 30.) Plaintiff received a new mattress on September 8 and received a new sheet on both September 6 and September 8. (*Id.* ¶¶ 27, 28.) Plaintiff also received new boxer shorts on September 6 and September 8. (*Id.* ¶ 32.) Plaintiff was provided three meals a day and drinking water upon request. (*Id.* ¶¶ 40, 43-44.) Plaintiff ate meals at a table outside of his cell, but on occasion refused a meal. (*Id.* ¶¶ 41-42.)

On September 10, Plaintiff asked to see a mental health professional and, on that same day, met with Dr. Seirup. (*Id*. ¶¶ 34-35.) During this visit, Plaintiff wore boxer shorts and was covered with a sheet. (*Id.* ¶ 35.) Plaintiff made no complaints to Dr. Seirup about the cleanliness of his cell or his clothing. (*Id.* ¶ 36.) Dr. Seirup followed up with Plaintiff on September 11. (*Id.* ¶ 37.) Plaintiff was also seen on September 11 by both medical and dental personnel. (*Id.* ¶ 38.) Plaintiff made no other specific requests for mental health or medical services while he was on contraband watch. (*Id.* ¶ 39.)

### 2. Plaintiff's Interactions with Defendant Manning

In September 2018, Defendant Manning supervised the officers assigned to the SMU, including the constant watch officer. (*Id.* ¶ 48.) Defendant Manning was present at the prison and on duty in the SMU on September 5, September 9, September 10, and September 11. (*Id.* ¶ 49.) Defendant saw Plaintiff during his shifts on these days, including when Defendant was in the area of Plaintiff's cell and when Defendant escorted Plaintiff to the bathroom. (*Id.* ¶ 50.) Defendant observed Plaintiff in his cell with a mattress and a sheet and Plaintiff was wearing boxer shorts. (*Id.* ¶ 51.) Defendant never denied Plaintiff's

6

request for a replacement sheet, mattress, or pair of boxer shorts. (*Id.*) Each time Defendant saw Plaintiff's cell, the cell was clean and there was no human excrement in the cell or on the cell's walls. (*Id.* ¶ 52.) When Plaintiff was removed from his cell during the contraband watch, an officer entered the cell and searched it for contraband. (*Id.* ¶ 53.) The log documenting Plaintiff's contraband watch does not reflect that Plaintiff's cell was unsanitary or that it contained human waste. (*Id.* ¶ 54.)

Each time Plaintiff informed prison staff that he had to urinate or defecate, he was placed in four-point restraints and removed from the constant watch cell. (*Id.* ¶ 55.) Plaintiff was not in four-point restraints when in his cell. (*Id.*) While working in the SMU on the relevant dates, Defendant Manning escorted Plaintiff to the bathroom whenever he needed to urinate or defecate. (*Id.*) When Plaintiff needed to use the bathroom, Defendant and two other officers, including the constant watch officer, escorted Plaintiff to a bathroom that contained a portable toilet. (*Id.* ¶ 56.) Plaintiff could use only the portable toilet and was provided with toilet paper. (*Id.* ¶ 57.) Defendant Manning and the other officers observed Plaintiff use the toilet and, thereafter, one officer searched Plaintiff's excrement in the portable toilet for contraband. (*Id.* ¶ 58.) Defendant never observed excrement in Plaintiff's boxer shorts and never saw Plaintiff not use the toilet paper provided. (*Id.* ¶ 59.) Defendant always allowed Plaintiff to wash his hands after using the toilet. (*Id.* ¶¶ 60-61.)

Plaintiff did not ask Defendant Manning to be able to take a shower. (*Id.* ¶ 63.) During the contraband watch, Plaintiff did not inform Defendant that Plaintiff's boxer shorts or his body were soiled with excrement. (*Id.* ¶ 64.) Plaintiff also did not complain

7

to Defendant about the temperature in the SMU. (*Id.* ¶ 66.) The log documenting Plaintiff's contraband watch does not reflect that Plaintiff requested a shower, that Plaintiff or his boxer shorts were soiled with excrement, or that Plaintiff complained about the temperature of his cell in the SMU. (*Id.* ¶¶ 65, 67.)

### 3. Plaintiff's Interactions with Other Defendants

Defendant Cantillo saw Plaintiff on one occasion while Plaintiff was on contraband watch in September 2018. (*Id.* ¶ 45.) Defendant Cantillo observed Plaintiff through a window. (*Id.*) Plaintiff was in a dry cell in the SMU, and the cell was clean and well lit. (*Id.*) The encounter lasted for less than five minutes. (*Id.* ¶ 46.) Defendant Cantillo had no other interactions with Plaintiff while he was on contraband watch in September 2018. (*Id.* ¶ 47.)

During Plaintiff's September 2018 contraband watch, Defendants Cantillo, Drake, Melquist, and Ross were not assigned to the SMU and were not responsible for the conditions of his confinement while on contraband watch. (*Id.* ¶ 75.) Defendants Cantillo, Drake, Melquist, and Ross were not the constant watch officers that observed Plaintiff between September 5 and September 13, 2018. (*Id.* ¶ 76.) They did not meet with Plaintiff while he was on contraband watch and do not recall ever having a conversation with Plaintiff during his contraband watch. (*Id.* at ¶¶ 77-78.) Plaintiff did not complain to Defendants Cantillo, Drake, Melquist, and Ross regarding the conditions of his contraband watch, and they were not aware of any alleged deficiencies in Plaintiff's treatment. (*Id.* ¶¶ 79-80.)

### 4. Plaintiff's October 2018 Sick Call

Inmates at the prison can request medical services by submitting a "sick call slip" to the prison's medical department. (*Id.* ¶ 69.) On October 31, 2018, Plaintiff submitted a sick call slip and requested mental health services. (*Id.* ¶ 70.) The sick call slip was the only one submitted by Plaintiff between September 1, 2018, and November 15, 2018. (*Id.* ¶ 71.) Plaintiff did not submit a sick call slip to request medical care or services for any alleged physical injury related to his September 2018 contraband watch and did not report any physical injury related to his contraband watch. (*Id.* ¶¶ 72-73.)

## DISCUSSION

Defendants contend that summary judgment should be entered in their favor because "Plaintiff was not subject to inhumane conditions" and Defendants were not "deliberately indifferent to Plaintiff's requests;" alternatively, Defendants argue they entitled to qualified immunity. (Motion at 2, 7.) Defendants also contend that summary judgment is warranted on Plaintiff's claim for compensatory and punitive damages because Plaintiff has not alleged that he sustained a physical injury. (*Id.* at 3, 15.)

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact

reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). "This approach is the same for unopposed motions because the 'failure of the nonmoving party to respond to a summary judgment motion does not in itself justify summary judgment.'" *United States v. Beckwith*, No. 2:18-cv-00322-NT, 2019 U.S. Dist. LEXIS 209072, at *8 (D. Me. Dec. 4, 2019) (quoting *Lopez v. Corporación Azucarera de P. R.*, 938 F.2d 1510, 1517 (1st Cir. 1991)). "It is well-settled that 'before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law.'" *Aguiar-Carrasquillo v. Agosto-Alicea*, 445 F.3d 19, 25 (1st Cir. 2006) (quoting *Lopez*, 938 F.2d at 1517).

If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of the plaintiff's claims, a trial-worthy controversy exists, and summary judgment must be denied as to any supported claim. *Perry*, 782 F.3d at 77 ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

### B.     Plaintiff's Eighth Amendment Claim

Plaintiff asserts his claim pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment based on the conditions of his confinement in the SMU during September 2018.

"Section 1983 provides a cause of action when an individual, acting under color of state law, deprives a person of constitutional rights." *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016); *see* 42 U.S.C. §1983.  To maintain a claim under section 1983, "a plaintiff must show that 'the challenged conduct [is] attributable to a person acting under color of state law' and that 'the conduct must have worked a denial of rights secured by the Constitution or by federal law.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 37 (1st Cir. 2013) (alteration in original) (quoting *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997)).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  "It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).   Under the Eighth Amendment, prison conditions cannot be inhumane, but they need not be comfortable. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)).

To establish a constitutional violation based on the conditions of confinement, a plaintiff must demonstrate both that "the alleged deprivation of adequate conditions [is] objectively serious, i.e., 'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm'" and that the defendant acted with "'deliberate indifference' to inmate health or safety." *Giroux v. Somerset Cnty.*, 178 F.3d 28, 32 (1st Cir. 1999) (quoting *Farmer*, 511 U.S. at 834). The objective component is "contextual and responsive to contemporary standards of decency," but viable claims require "extreme deprivations." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992) (quotation marks omitted); *see Farmer*, 511 U.S. at 834 ("[A] prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'") (quotation marks omitted). "A prison official is deliberately indifferent where [the official] 'knows of and disregards an excessive risk to inmate health or safety.'" *Leite v. Bergeron*, 911 F.3d 47, 52 (1st Cir. 2018) (quoting *Farmer*, 511 U.S. at 837); *see Surprenant v. Rivas*, 424 F.3d 5, 19 (1st Cir. 2005) (recognizing that "[d]eliberate indifference, in this sense, is a mental state akin to criminal recklessness" (citation omitted)). Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Here, the facts in the summary judgment record would not support a finding of an Eighth Amendment violation. First, under the objective prong, the record does not show that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. The uncontroverted facts establish that Plaintiff was in a clean,

"dry" cell, provided with a bench, mattress, and boxer shorts, and received meals and drinking water.  (DSMF, ¶¶ 15, 20, 26-32, 40-44.)  Plaintiff's cell remained clean during his time in the SMU.  (*Id.* ¶¶ 45, 52, 54.)  Defendants did not observe any of Plaintiff's excrement on his body or on his boxer shorts.  (*Id.* ¶¶ 59, 64-67. 79-80.)  Additionally, the record does not show that Plaintiff complained to the prison's medical staff about the cleanliness of his cell or his clothing during his confinement in the SMU.  (*Id.* ¶¶ 36, 72-73.)

Given that the record would not support a finding of "a substantial risk of serious harm" to Plaintiff under the objective prong, the record likewise does not show that Defendants acted with deliberate indifference in "disregard[ing]" any risk "by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim, Plaintiff's sole remaining claim.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendants' motion for summary judgment.[5]  (Motion, ECF No. 45.)

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen

---

[5] Because I have recommended the Court grant the motion and enter summary judgment in favor of Defendants on Plaintiff's Eighth Amendment claim for the reasons set forth herein, I have not addressed Defendants' qualified immunity argument or Defendants' arguments related to damages and the Prison Litigation Reform Act, 42 U.S.C. §1997e(e).

(14) days of being served with a copy thereof.  A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

  Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

                /s/ John C. Nivison
                U.S. Magistrate Judge

Dated this 16th day of March, 2021.